Richard D. Gluck (SBN 151675)
Jake D. Sesti (SBN 339005)
SELTZER CAPLAN McMAHON VITEK
A Law Corporation
750 B Street, Suite 2100
San Diego, California  92101-8177
Telephone: (619) 685-3003
Facsimile: (619) 685-3100
E-Mail:  gluck@scmv.com
          sesti@scmv.com

John E. Giust (SBN 196337)
LAW OFFICES OF JOHN GIUST
9984 Scripps Ranch Boulevard, Suite 192
San Diego, California 92131
Telephone: (619) 993-1656
E-Mail: john@giustlaw.com

Attorneys for Plaintiff JACKRABBIT MOBILITY,
INC., a Delaware Corporation

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKRABBIT MOBILITY, INC., a Delaware Corporation, <br><br> Plaintiff <br><br> v. <br><br> HIMIWAY ELECTRIC POWER LLC, a California limited liability company; HIMIWAY INTELLIGENT TECHNOLOGY USA, a California Corporation; HIMIWAY SAN DIEGO ELECTRIC BIKE, an entity of unknown form. <br><br> Defendants. | CASE NO.: **'23 CV 0847 RBM DDL** <br><br> **COMPLAINT FOR:** <br><br> 1. **TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125 (a));** <br><br> 2. **STATE TRADE DRESS DILUTION;** <br><br> 3. **UNFAIR COMPETITION (15 U.S.C. § 1125(a));** <br><br> 4. **UNFAIR COMPETITION (CAL BUS. & PROF. CODE § 17200 *et seq.*);** <br><br> 5. **INTENTIONAL INTEREFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; and** <br><br> 6. **PATENT INFRINGEMENT (35 U.S.C. § 271).** <br><br> **JURY TRIAL DEMANDED** |

SELTZER CAPLAN McMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

Plaintiff JackRabbit Mobility, Inc. ("Plaintiff") alleges on information and belief as follows:

## I.   PARTIES

1.     Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its principal place in San Diego, California.  Plaintiff is the holder of valuable intellectual property rights covering the design and distinctive look and feel of its JackRabbit micro ebike (the "JackRabbit").

2.     Defendant Himiway Electric Power LLC ("Himiway LLC") is a Nevada limited liability company, doing business in California as an electric bike manufacturer, distributor, and seller, with its principal place of business at 4250 Shirley Ave, El Monte, CA 91731.  As alleged more fully below, Himiway LLC is infringing Plaintiff's patent and trade dress rights by manufacturing, selling, or offering to sell a copycat micro ebike, the Himiway Pony, that is an obvious knockoff of the JackRabbit.

3.     Defendant Himiway Intelligent Technology USA ("Himiway USA") is a corporation organized and existing under the laws of the State of California, doing business in California as an electric bike manufacturer, distributor, and seller with its principal place of business at 3641 Norwich Place, Rowland Heights, CA 91748.  As alleged more fully below, Himiway USA is infringing Plaintiff's patent and trade dress rights by manufacturing, selling, or offering to sell the Pony, a copycat micro ebike that is an obvious knockoff of the JackRabbit.

4.     Defendant Himiway San Diego Electric Bike ("Himiway San Diego"), an entity of unknown form, operates a retail Himiway store located at 4192 Convoy Street, San Diego, CA 92111, operates its Facebook page at https://www.facebook.com/HimiwaySanDiego.   The Defendants describe Himiway San Diego as Himiway's "flagship store."  As alleged more fully below, Himway's San Diego Flagship Store is infringing Plaintiff's patent and trade dress rights by selling or offering to sell the Pony, a copycat micro ebike that is an obvious knockoff of the JackRabbit.

5. On information and belief, each of the named Defendants herein are associated with one another, and thus are collectively referred to as "Defendants" and/or "Himiway."

6. Defendant Himiway LLC, Defendant Himiway USA, and Defendant Himiway San Diego were notified about the trade dress and Patent claims herein by email to marketing@himiwaybike.com and branding@himiwaybike.com on April 4, 2023, and were provided a copy of the asserted patent.

7. A response from Dr. Jiawei He, Chief Executive Officer of Himiway USA and Director of Supply Chain Management, Himiway Bike (www.himiwaybikes.com, email jw.he@himiwaybikes.com) was received on at least April 10, 2023, which indicates notice of the claims and the attached materials were received. On information and belief, by virtue with their association with one another, all Defendants received this notice.

## II.   JURISDICTION AND VENUE

8. This is an action for patent infringement under 35 U.S.C. section 271 and trade dress infringement under the Lanham Act, 15 U.S.C. § 1121, seeking injunctive relief and damages arising out of Defendants' unauthorized acts in manufacturing and selling products that infringe on Plaintiff's patent and trade dress rights.

9. This Court has subject matter jurisdiction over this action under 35 U.S.C. § 271 (patent infringement), 15 U.S.C. § 1121 (trade dress infringement), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws). This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. §§ 1338(b) and 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10. This Court has personal jurisdiction over Defendants because Defendants have committed and continue to commit the wrongful acts complained of herein in California, including acts of infringement in violation of 15 U.S.C. § 1125 and 35 U.S.C. § 271, and Defendants transact business in the State of California and in this District.

Defendants' actions include making, using, offering to sell, and/or selling their infringing product, the "Pony Portable Mini Bike" (the "Pony"), to consumers, retailers, and sellers located in the United States and in California through, among other means, their flagship store in San Diego, California, more than 300 dealers nationwide, their website, https://www.himiwaybike.com, and online retailers such as Amazon (including at https://www.amazon.com/Himiway-Portable-Adjustable-Lightweight Certified/dp/B0C36GF9F6/?th=1, including Amazon Standard Identification Numbers (ASIN) at least as follows: B0C36GF9F6 (5AH pearl white), B0C36GK44P (10AH midnight forest), B0C36H2SM8 (10AH midsummer), B0C36GZX9Q (10AH mint green), B0C36H3PQR (10AH pearl white), B0C36JWCZC (10AH space gray)). Defendants derive revenue from interstate and international commerce, offer the Pony for sale within this District, and unfairly compete with Plaintiff within this District and elsewhere, including by selling the Pony nationwide through more than 300 retailers and through Amazon.

11.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants regularly transact and have an established business within this District and a substantial part of the events giving rise to this action occurred in this District as, among other things, Defendants sell or offer to sell the Pony at the Himiway flagship store on Convoy Street in San Diego, California.

## III.   COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.   Plaintiff's Business and Intellectual Property

12.     Plaintiff is a recognized leader and trendsetter in the burgeoning area of ultra-portable, micro electric bikes, offering what an Outside Magazine writer called "one of the most zippy, fun bikes" he hopped on at a "Big Gear Show" at which more than 250 brands were represented.  Weighing only 24 pounds and able to be folded down to 7 inches wide, the JackRabbit offers a truly unique alternative to the larger, more expensive ebikes that thieves love to target.  And with and a top speed of 20 miles

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

per hour, the JackRabbit also offers a safer, more efficient, and more exhilarating alternative to scooters and other similar means of transportation.

13.    JackRabbit Mobility was originally founded as an LLC in 2018 and transitioned into a C Corporation in 2021. From the beginning and throughout, the JackRabbit Mobility organization was focused on creating a lightweight and short-wheelbase two-wheeled electric vehicle that had relatively large wheels and bicycle elements.

14.    Starting from the core inventive direction of the JackRabbit ebike, there has been a consistent inventive direction of the JackRabbit micro eBike in the years leading up to the first commercial version in 2018 and in years since. The JackRabbit has a consistent and unique design in look and feel.  The JackRabbit uses relatively large wheels in a short wheelbase compared to all other known two wheeled light electric vehicles that typically have smaller wheels and/or longer wheelbases. The JackRabbit is made further unique from all known previous vehicles due to the inventing team's focus on attaining a product with a combined outcome of being extremely lightweight, low maintenance, able to be stored and transported in small spaces (such as car trunks, passenger areas of cars, and in closets), and yet still being fun to ride.  The JackRabbit team was able to develop a product that, until copied by the Himiway Pony, is visually unlike any other product previously seen and that performs impressively well despite the appearance to some professionals in the bicycle industry that such a design would have performance problems.  Up until now, this JackRabbit is the only vehicle that uniquely employs two 20-inch diameter wheels in a short wheelbase configuration and in which the rear wheel is electrically powered, uses fold-down foot pegs instead of operable pedals, utilizes a rectangularly shaped main frame area, and a single rear brake.  Extensive ride testing and interviews occurred throughout the inventive process and for several years the JackRabbit was uniquely different from a product impression and performance standpoint.

15.    Thomas Piszkin, Plaintiff's Chief Technology Officer and co-founder, is the core inventor of the JackRabbit Design.  Mr. Piszkin filed for a design patent for an

"Electric-Assist Adult Strider" on March 14, 2020.   The United States Patent and Trademark Office issued the patent – Patent No. US D964,218 S ("JackRabbit Patent" or "'218 Patent") on September 20, 2022.  A copy of the JackRabbit Patent is attached as **Exhibit 1**.  Plaintiff is the assignee of the JackRabbit Patent and has the legal right to assert such patent.

16.    The JackRabbit Patent covers the ornamental appearance of the design depicted in its Figures, which is at least the JackRabbit frame.  The Himiway Pony infringes the JackRabbit Patent because each is the same to an ordinary observer.

17.    Before the filing of this lawsuit, Himiway was informed of its infringement of the JackRabbit Patent as well as its trade dress infringement.  Himiway continues to infringe nonetheless, including by selling, offering to sell and importing its Pony on its website, on amazon.com, and by other means.

18.    Himiway's Pony website, at https://himiwaybike.com/products/portable-electric-mini-bike, indicates the purchase option "e-bike assembly from $112.7 with velotooler".

19.    On information and belief, Himiway provides support and instructions, and/or manuals, regarding the Himiway Pony, including those for full or partial assembly that, when followed by the end user or customer (or third party such as velotooler), result in a fully operational Himiway Pony as depicted herein.

20.    The unique foregoing combination of elements and the trade dress of the JackRabbit is non-functional.  For example, the implementation of a rectangular shaped central/main frame that is comparatively large to the rest of the vehicle and the presence of comparatively large wheels for a vehicle of this size add to the unique visual style but are not necessary for the device to operate; in fact, the visual appearance could be altered and the device would still operate.

21.    Plaintiff has achieved extensive exposure and widespread recognition of its JackRabbit ebike and brand in the United States and abroad through its efforts over the past several years, resulting in being featured as "Best Micro Ebike" for 2021, 2022, and

2023 by wired.com, "best electric bike under $1000" for 2022 and 2023 on electrek.com, and featured as a highly rated product in online and print articles and videos from publications such as Forbes, Esquire, Rolling Stone, Fast Company, Engadget, Electric Bike Report, BikeRide, and Outside.

22.   Plaintiff has conducted substantial and continuous marketing and promotion since its inception. Since 2018, Plaintiff has spent over $500,000 in advertising, promotion, and marketing of the JackRabbit and its unique appearance.  Examples of Plaintiff's promotional efforts include marketing through its webpage, https://www.jackrabbit.bike, and various social media outlets, including Facebook, Twitter, Instagram, TikTok, and YouTube, third-party platforms, including Google Ads, Camper Report, Bass Pro Shops online, Army Airforce Exchange online, and Camping World online, as well as in print media, such as Southern Boating, Flying, and Boating Magazine.  In addition, Plaintiff has promoted and advertised the JackRabbit at numerous trade shows and industry events in the United States, including Micromobility Americas, Outdoor Retailer, The Big Gear Show, Fort Lauderdale International Boat Show, Miami Boat Show, Palm Beach Boat Show, Electrify Expo, and CABDA.

23.   Plaintiff has enjoyed considerable commercial success, with thousands of customers and deals.

24.   As a result of Plaintiff's continuous and exclusive use of the JackRabbit Trade Dress in connection with the sale and marketing of the JackRabbit, the trade dress enjoys wide acceptance and association with Plaintiff within the industry and has come to be widely and favorably recognized by those in the industry as an indicator of the origin of Plaintiff's goods.

25.   As a result of Plaintiff's extensive use and promotion of its JackRabbit Trade Dress, Plaintiff has built up and now owns valuable goodwill that is symbolized by the trade dress. The purchasing public, dealers, trade shows, event production companies, press, advertising entities, business-to-business enterprise customers, athletes, celebrities, government agencies, and media companies, have all come to associate the JackRabbit

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

Trade Dress with Plaintiff.  This distinctive and non-functional trade dress has achieved significant secondary meaning. Based on years of nationwide use and reputation, customers in this District and elsewhere readily recognize the JackRabbit brand and are aware of the high reputation and quality of Plaintiff's product. The JackRabbit Trade Dress has enormous value as a symbol of Plaintiff's quality products and services.

**B.    Defendants Intentional and Willful Infringement on the JackRabbit Patent and the JackRabbit Trade Dress**

26.    On information and belief, in or around early 2022, one or more Defendants observed Plaintiff presenting the JackRabbit at the Electrify Expo product exhibition shows in Long Beach, California and later in Austin, Texas, as well as other various bike shows around the country, including CABDA, Outdoor Retailer, The Big Gear Show, and Micromobility America.

27.    On information and belief, one or more Defendants thereafter copied the patented design and distinctive JackRabbit Trade Dress, producing the Pony as a questionable-quality, less expensive knock-off that it has positioned and marketed to dealers and consumers as a lower-cost alternative to the JackRabbit.

28.    Defendants make, use, sell, and offer to sell the Pony through their website, https://www.himiwaybike.com, their flagship store in San Diego, more than 300 dealers nationwide, and online retailers such as Amazon.  Defendants promote, advertise, exhibit, and market the Pony on and through their website, YouTube and other social media, and at trade shows, exhibitions, and industry events around the country.  To further their scheme to profit from Plaintiff's intellectual property, Defendants have deliberately targeted their marketing at Plaintiff's dealers and customers, unfairly suggesting that the Pony is a lower cost version of the JackRabbit.  In fact, Defendants have purposefully copied Plaintiff's marketing materials and marketing strategy to further sow dealer and customer confusion over the origin of the Pony.  Below are examples of such copying:

### Earlier JackRabbit Post    Later Post by Himiway San Diego Electric Bike





### Earlier JackRabbit Advertisements Emphasizing the JackRabbit as "Portable"





Later Himiway Advertisements Copying the Emphasis on "Portability"



Seltzer Caplan McMahon Vitek
750 B Street, Suite 2100
San Diego, California 92101-8177

### Earlier JackRabbit Advertisements Emphasizing the JackRabbit as a "Mini eBike"





### Later Himiway Advertisements Referring to the Pony as a "Mini Bike" and "Mini E-Bike"



SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177



**Earlier JackRabbit Advertisements Emphasizing "No Pedals," "Pedal Free," and "Easy Riding"**













## Later Himiway Advertisements Copying the Emphasis on "Easy Riding" and "Pedal-Free"



SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177



**Earlier JackRabbit Trade Shows Emphasizing the Small JackRabbit by Placing it on a Table**



### Later Himiway Advertisement Copying JackRabbit by Placing the Pony on a Table



### Earlier JackRabbit Advertisements Showing the JackRabbit Fits in a Car's Trunk






And a quick life hack: because JackRabbit is so compact, you can keep one in your car. Park far away from a big event where it's easier to park, and simply JackRabbit the rest of the way!

**Later Himiway Advertisements Showing the Pony in a Car's Trunk**



All you need to know about Himiway Pony:
Unraveling the Origin and Concept

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

### Earlier JackRabbit Advertisements Referring to the JackRabbit as "Small" and "Mighty"



### Later Himiway Advertisements Copying the Emphasis on the Pony as "Tiny" and "Mighty"



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177



**Earlier JackRabbit Advertisements Emphasizing the Portability of the JackRabbit and That it "Goes Anywhere"**

**Later Himiway Advertisements Copying the Emphasis on the Pony Stating it Can "Go anywhere"**

**Earlier JackRabbit Advertisements Referring to the JackRabbit as a "Head Turner"**



## Later Himiway Advertisements Stating that the Pony Will "Turn Heads"



SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

## Earlier JackRabbit Advertisement of a Person Lifting the JackRabbit Above His Head to Show its Lightweight and Portability



## Later Himiway Advertisement Copying JackRabbit and Showing Someone Lifting the Pony Above Their Head



**Earlier JackRabbit Advertisement with a Distinct Advertising Style and Referring to the JackRabbit as "SIMPLE," "LIGHT," and "SAFE"**







**Later Himiway Advertisements Copying JackRabbit's Distinct Style of Advertising**







## <u>Earlier JackRabbit Advertisement Stating Do Not Let the Small Size "fool you"</u>



## <u>Later Himiway Advertisement Copying JackRabbit and Stating "don't let the size fool you"</u>



SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

29.     Defendants' intentional copying of the JackRabbit Trade Dress and of Plaintiff's marketing strategies will further mislead Consumers because the Pony comes up in Google search ads when you search for "JackRabbit Ebike" and/or "JackRabbit Micro Ebike," including options to purchase the Pony.  Thus, consumers easily could and will confuse the Pony for a JackRabbit and purchase the Pony instead of the JackRabbit thinking they are the same the product.  Since Himiway announced the Pony, Plaintiff has seen a significant increase in the cost of brand terms (i.e., "cost per click" or "CPC") and a decrease in revenue attributed to Google Search advertisements specific to brand terms (otherwise known as "ROAS," or "return on ad spend").



30.     Defendants unfair targeting of Plaintiff's existing and past customers and dealers has already resulted in tangible harm to Plaintiff, as one of Plaintiff's customers recently informed Plaintiff they would be purchasing an order of Pony bikes over the JackRabbit because the Pony is a cheaper version of the same bike.

31.     That the Pony is an obvious copycat or knockoff of the JackRabbit has been duly noted by numerous bloggers, online commentators, dealers, and consumers.

32.     For example, in an online article on electrek.co headlined, "Himiway launches 3 new electric bikes including a silly little $499 model," the author concluded that the Pony is a "**downright rip-off**" of the JackRabbit and a "**straight up Jackrabbit**

SELTZER CAPLAN McMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

**copycat**." It is noted that the Electrek article incorrectly uses the "2018" date under the image of the JackRabbit.  The image shown was of the 2020 JackRabbit.

33.    TopCarNews republished the Electrek article, which can be found at https://topcarnews.net/himiway-launches-3-new-electric-bikes-including-a-silly-little-499-model-s220924.html.

34.    An online article on EVehicleTrip reached the same conclusion.  The EVehicleTrip article can be found at https://evehicletrip.com/himiway-e-bikes-three-e-bikes-you-should-know-about/.

35.    Similarly, a video posted on an "Electric Rides" YouTube channel with almost 3,000 subscribers used a clip of Marty McFly from *Back to the Future* to mock the Pony as an obvious ripoff of the JackRabbit, saying "I've seen this one" when shown a picture of the Pony.  Electric Rides' YouTube clip can be viewed at https://www.youtube.com/watch?v=jsqb648d3f0.

36.    Side-by-side comparisons showing the JackRabbit's distinctive trade dress and Defendants' Pony replica are below.  The side-by side comparison shows the Pony copies the non-functional product design trade dress, including the distinctive non-functional wide frame in the center of the JackRabbit and the exact same location for the non-functional placement of JackRabbit logo on the wide frame in the center of the JackRabbit. The distinctive large wheels for the size of the overall bike and the close configuration of the wheels to each other (i.e., the wheel size and wheels placement ratio) compared to other bikes.  The same seat tube angle and folding foot peg approach.  The same forward angled handlebars and removable handlebar approach.

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

| **JackRabbit** | **Pony** |



37. While the look and feel of the Pony is identical to the JackRabbit, the quality of the Pony is, on information and belief, lower. The Pony's specifications indicate it is heavier and the electric components appear less reliable. Its price indicates that, on information and belief, cost-cutting measures were likely employed in its design. If Defendants' sale of a less-expensive, questionable quality knockoff is not halted, it will cause irreparable harm to the goodwill and brand reputation that Plaintiff has built over the history of its exclusive use. The striking similarities between the JackRabbit and Pony shows beyond doubt that Defendants' misconduct is intentional. Their clear copying of the JackRabbit's distinctive design, look and feel, together with their use of numerous confusingly similar marketing materials and strategies targeted at JackRabbit's customers and dealers, leaves no doubt as to their intention. Quite simply, Defendants are attempting to unlawfully profit from Plaintiff's hard-earned goodwill and positive reputation, and to wrongfully deceive potential customers and observers alike into believing that Defendants' lower quality goods are associated with Plaintiff, when they are not.

38. Plaintiff has been and will continue to be irreparably harmed by Defendants' wrongful activities and many violations of Plaintiff's rights. Defendants' actions have caused and will continue to cause Plaintiff to suffer loss of market share and access to customers, strained business relationships with third parties, price erosion, and loss of

SELTZER CAPLAN McMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

goodwill and reputation.  Plaintiff lacks an adequate remedy at law to compensate it for the harm that it has suffered, and, absent the requested preliminary relief, will continue to suffer unless and until Defendants' illegal activities are enjoined.

39.     Defendants' infringing acts severely undermine Plaintiff's significant investment in the JackRabbit (including its trade dress) and reputation.  Plaintiff brings this action seeking damages and injunctive relief to remedy the harm that it has suffered and continues to suffer as a result of Defendants' wrongful acts.

## FIRST CLAIM FOR RELIEF

### (Trade Dress Infringement – 15 U.S.C. § 1125(a))

40.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-39.

41.     Plaintiff owns all rights and title to the distinctive and non-functional JackRabbit Trade Dress, which it has continuously used in commerce since at least 2020.  As alleged above, the JackRabbit Trade Dress has acquired distinctiveness throughout the country and enjoys secondary meaning among consumers, identifying Plaintiff as the source of the JackRabbit.

42.     Plaintiff never authorized Defendants or consented to Defendants' use of the JackRabbit Trade Dress in connection with the Pony, nor did Plaintiff ever give Defendants permission or authorization to use Plaintiff's technical product information.

43.     Defendants have misappropriated the JackRabbit Trade Dress by mimicking a combination of each element of that trade dress, including non-functional aspects such as the frame, wheel locations and sizes, the overall size, and other items.  Defendants' use of its confusingly similar Pony knockoff has caused and is likely to continue to cause confusion, deception, and mistake among customers and dealers by creating the false and misleading impression that Defendants' goods are manufactured or distributed by Plaintiff, or are affiliated, connected, or associated with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff.

SELTZER CAPLAN McMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

44.     Defendants' actions constitute unfair competition and false designation of origin, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45.     Defendants knew of the JackRabbit Trade Dress when it designed the Pony and copied the JackRabbit Trade Dress for the express purpose of causing confusion among Plaintiff's customers and dealers.  Thus, Defendants' infringement has been and continues to be intentional, willful, and without regard to the JackRabbit Trade Dress.

46.     Defendants' activities have caused and, unless and until enjoined by this Court, will continue to cause, a likelihood of confusion and deception among members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by the JackRabbit Trade Dress.

47.     Plaintiff has been and will continue to be irreparably harmed and damaged by Defendants' conduct.  Plaintiff lacks an adequate remedy at law to compensate for this harm and damage.

48.     Defendants have gained profits by virtue of their infringement of the JackRabbit Trade Dress.

49.     Plaintiff has also sustained damages as a direct and proximate result of Defendants' infringement of the JackRabbit Trade Dress, in an amount of be proven at trial.

50.     Because Defendants' actions have been and continue to be willful, Plaintiff is entitled to treble its actual damages or Defendants' profits, whichever is greater, and to an award of costs, and this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF

### (State Trade Dress Dilution and Injury to Business Reputation)

51.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-50.

SELTZER CAPLAN McMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

52.     Plaintiff has extensively and continuously promoted and used the JackRabbit Trade Dress throughout the United States and the JackRabbit Trade Dress has become a distinctive and well-known symbol of Plaintiff's company and products.

53.     Defendants' unauthorized use of the JackRabbit Trade Dress dilutes the distinctiveness of the trade dress by eroding the public's exclusive identification of the distinctive JackRabbit Trade Dress with Plaintiff and tarnishing and degrading the positive associations and prestigious connotations thereof.

54.     Defendants are causing and will continue to cause irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of the JackRabbit Trade Dress in violation of the anti-dilution laws, codified by statutes at Cal. Bus. & Prof. Code § 14200 *et seq*.

55.     Plaintiff is therefore entitled to injunctive relief, damages, and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

## **THIRD CLAIM FOR RELIEF**

### **(Unfair Competition – 15 U.S.C. § 1125(a))**

56.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-55.

57.     The JackRabbit Trade Dress has become uniquely associated with, and hence identifies, Plaintiff.  The JackRabbit Trade Dress is wholly associated with Plaintiff due to Plaintiff's longstanding, exclusive use of the JackRabbit Trade Dress, and as such, Plaintiff is entitled to have the JackRabbit Trade Dress adequately protected with respect to the conduct of its business.

58.     Defendants' use of the JackRabbit Trade Dress in connection with the marketing and sales of the Pony constitutes federal unfair competition because customers and/or would-be customers are likely to be confused, and have already been confused, about the origin of the goods using the JackRabbit Trade Dress in the marketplace, as well as the existence of an affiliation, connection, or association between JackRabbit and Himiway.  Defendants copying and use of advertising and marketing materials and

strategies that are confusingly similar to JackRabbit's advertising and marketing materials furthers the confusion among consumers and dealers. The continued unauthorized use of the JackRabbit Trade Dress will also lead consumers and potential consumers to erroneously believe that Defendants' Pony is being placed into the market with Plaintiff's consent and authority. Defendants continued use of the JackRabbit Trade Dress has caused, and unless and until restrained, will continue to cause serious and irreparable harm to Plaintiff.

59.     Defendants, in using the JackRabbit Trade Dress for the Pony, have acted willfully and with full knowledge of Plaintiff's rights in the JackRabbit Trade Dress. Thus, Defendants' acts constitute unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.     Defendants' purpose and goal of the aforementioned conduct was and is to divert sales from Plaintiff and thereby injure Plaintiff to enrich themselves. Defendants' conduct already has damaged Plaintiff's relationships with customers and dealers and caused Plaintiff to lose customers and dealers, including New Life EBike Co. in Winter Park, Florida.

61.     Plaintiff has thus sustained damages as a direct and proximate result of Defendants' infringement of the JackRabbit Trade Dress, in an amount to be proven at trial.

62.     By reason of Defendants' unfair competition, Plaintiff has suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Defendants from any further acts of unfair competition. Defendants' continuing acts of unfair competition, unless enjoined, will cause irreparable damage to Plaintiff in that Plaintiff will have no adequate remedy to compel the infringement to stop. Plaintiff will be compelled to prosecute a multiplicity of actions, one each time that Defendants commit such acts, and in each action it will be extremely difficult to ascertain the amount of compensation that will afford Plaintiff adequate relief. For that reason, Plaintiff requests

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

that the Court issue a preliminary injunction and permanent injunction that enjoins Defendants from engaging in their wrongful conduct.

### FOURTH CLAIM FOR RELIEF

**(Unfair Competition – California Bus. & Prof. Code § 17200 *et seq.*)**

63.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-62.

64.     Plaintiff brings this cause of action under California's Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200 *et seq.*, which prohibits businesses from engaging in unlawful, unfair, or fraudulent business acts or practices.

65.     The foregoing acts of unfair competition alleged above constitute unfair business practices under the UCL, for which Plaintiff is entitled to restitution and injunctive relief.

66.     As a direct and proximate result of the aforementioned acts of unfair business practices, Defendants have received ill-gotten gains at Plaintiff's expense.  For this reason, Plaintiff is entitled to restitution and disgorgement from Defendants with respect to those ill-gotten gains.

67.     In addition, Plaintiff has suffered and will continue to suffer irreparable injury unless and until this Court enters an order enjoining Defendants from any further acts of unfair business practices.  Defendants' continuing acts of unfair competition, unless enjoined, will cause irreparable damage to Plaintiff in that Plaintiff will not have an adequate remedy to compel Defendants to cease such acts.  Plaintiff is therefore entitled to a preliminary injunction and a permanent injunction against Defendants further infringing and unfairly competitive conduct.

### FIFTH CLAIM FOR RELIEF

**(Intentional Interference with Prospective Economic Advantage)**

68.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-67.

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

69.     Plaintiff has existing and prospective business relationships with numerous companies, retailers, and customers throughout the nation and particularly in Southern California.

70.     Defendants knowingly and with bad faith have offered, and continue to offer, Plaintiff's current and prospective customers and dealers infringing products, i.e., the Pony, at a lower cost.  For example, Defendants have contacted at least three of Plaintiff's current dealer customers, Last Mile SF, in San Francisco, California, EV Motion, in Red Bank, New Jersey, and Rides N Motion, in Scottsdale, Arizona, which is especially notable because these are relatively small dealers without a large retail or online presence and would likely not have been found or contacted unless Defendant purposefully visited the "Dealer Locator" on Plaintiff's website and then purposefully targeted these customers.  In these instances, the Plaintiff's customers proactively contacted the Plaintiff to inform the Plaintiff that Defendants contacted them to offer what they deemed to be a low quality and low-cost knockoff of the Plaintiff's product. An additional example involves a current end customer of the Plaintiff, Vicki F., that viewed the Defendants' activities on the internet and then contacted the Plaintiff to inform the Plaintiff that "You guys are being knocked off." A further example involves Plaintiff's prospective dealer customer, David Mickelsen, Owner of New Life EBike Co., in Winter Springs, Florida, who sent an email to Plaintiff stating "Thank you but not interested. We have the Himiway Pony coming in which is very similar & a lot better price."

71.     As a direct result of Defendants' actions, the Plaintiff has a clear statement of lost sales from a prospective customer, New Life EBike, and thereby indication of additional lost business from other current and prospective dealer customers and individual consumer customers.  Thus, Plaintiff was damaged in an amount according to proof due to the loss of sales and interference with Plaintiff's existing business relationships and with interference with prospective clients.

72.     Defendants knew of the existing and prospective business relationship between Plaintiff and Last Mile SF in San Francisco, California and Rides n Motion in

Scottsdale, Arizona and intentionally interfered with Plaintiff's current and prospective business advantage by manufacturing, offering for sale, and/or selling the Pony to Plaintiff's current and prospective customers and dealers, thereby undercutting Plaintiff and its profits.

## SIXTH CLAIM FOR RELIEF

### (PATENT INFRINGEMENT – 35 U.S.C § 271)

73.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-72.

74.     On March 14, 2020, the United States Patent and Trademark Office duly and legally issued the JackRabbit Patent to Mr. Piszkin, who assigned the JackRabbit Patent to Plaintiff on March 24, 2023.  A copy of the JackRabbit Patent is attached as **Exhibit 1**.

75.     The JackRabbit Patent carries a presumption of validity under 35 U.S.C. § 282 (a) and is enforceable.

76.     Plaintiff is the owner of the entire right, title, and interest in the JackRabbit Patent by assignment and possesses the right to sue for and obtain equitable relief and damages for infringement of the JackRabbit Patent.

77.     Defendants have infringed and continue to infringe the JackRabbit Patent by making, using, selling, and offering for sale in the United States, and/or importing into the United States the Pony, which embodies the design of the JackRabbit Patent, without authority or license from Plaintiff.

78.     Additionally, Defendants have infringed and continue to infringe the JackRabbit Patent by applying the patented design, or a colorable imitation thereof, to an article of manufacture, such as the Pony, for the purpose of sale and/or by selling, offering, or exposing for sale an article of manufacture, such as the Pony, to which the design of the JackRabbit Patent or a colorable imitation thereof has been applied.   Thus, Defendants' actions violate 35 U.S.C. §§ 271(a) and 289.

79.   The Pony comprises the following design, which is a "clone," "knockoff" or "copycat" of the JackRabbit.  As shown below, the JackRabbit (top left) and a figure of the design patent (top right) are compared to the Pony (bottom center) from a side perspective.



80.   As alleged above, in the eye of the ordinary observer, the ornamental appearance of the JackRabbit, JackRabbit Patent and the design of the Pony are substantially the same, such that the ordinary observer would be deceived into believing that the design of the Pony is the same design as the JackRabbit and JackRabbit Patent.  Indeed, as alleged more fully above, numerous "ordinary observers" already have concluded that the Pony is a "downright rip-off," a "straight up Jackrabbit copycat," an "exact knock-off of the JackRabbit," and a "JackRabbit clone."  Thus, the Pony infringes the JackRabbit Patent.

81.   Although only a side perspective is shown herein, the other perspectives (shown in the JackRabbit Patent Figures) lead to the same conclusion and result, with even more resemblance, such that, as a whole, there is infringement.

82.     Upon information and belief, the assembly of the accused Himiway Pony in accordance with Defendants' support and/or instructions for the normal assembly procedure infringes the JackRabbit Patent. Defendants have induced infringement and continue to induce infringement of such claims either literally or under the doctrine of equivalents, by encouraging others, including end purchasers or contractors to assemble and use the Himiway Pony. By providing support and instructions, Defendants have intentionally encouraged and will continue to intentionally encourage acts of direct infringement by others, including customers, retailers, and manufacturers with knowledge of the JackRabbit Patent and with knowledge that their acts are encouraging infringement, in violation of 35 U.S.C. § 271(b).

83.     The accused Pony constitutes a material part of the invention of the JackRabbit Patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use; the Pony is especially made or adapted for infringement in violation of 35 U.S.C. §271(c).  Defendants have contributorily infringed and continue to contributorily infringe the JackRabbit Patent, either literally or under the doctrine of equivalents, by promoting the making and use, and/or assembly and use of the accused product in accordance with its support and/or directions for assembly in the United States and in this District by others, including customers and contractors.

84.     Defendants' past and present continued infringement, active inducement, and contributory infringement of the JackRabbit Patent has been willful and deliberate, with full knowledge, and in blatant disregard for Plaintiff's exclusive patent rights. Defendants have been aware of the JackRabbit Patent since at least April 4, 2023.  The harm to Plaintiff arising from Defendants' acts of infringement of the JackRabbit Patent is not fully compensable by monetary damages because Plaintiff has suffered and continues to suffer irreparable harm that has no adequate remedy at law, which will continue unless and until Defendants' conduct is enjoined.

85.     Defendants have gained profits by virtue of their infringement of the JackRabbit Patent.

86.     Plaintiff has suffered and is continuing to suffer damages as a direct and proximate result of Defendants' infringement of the JackRabbit Patent, and Plaintiff is entitled to compensation and other monetary relief to the fullest extent allowed by law, including attorneys' fees under 35 U.S.C. §§ 284 and 285.

87.     Plaintiff has suffered injury, including irreparable injury, as a result of Defendants' infringement of the JackRabbit Patent. Plaintiff is therefore entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants from infringing the JackRabbit Patent.

88.     Defendants should also be required to pay Plaintiff's attorneys' fees, expenses, and costs, including treble damages, for Defendants' willful and blatant disregard of Plaintiff's patent rights.

## IV.     COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

89.     Plaintiff hereby demands a trial by jury on all issues so triable in this Action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

1.     Judgment that Defendants have infringed the JackRabbit Trade Dress;

2.     Judgment that Defendants have infringed the JackRabbit Patent;

3.     Judgment against Defendants for Defendants' total profits for any article of manufacture to which the design of the JackRabbit Patent has been applied as a result of Defendants' infringement of the JackRabbit Patent in an amount to be determined at trial as provided under 35 U.S.C. § 289 and for money damages sustained as a result of Defendants' infringement of the JackRabbit Patent in an amount to be determined at trial under U.S.C. § 284, whichever is greater;

4.     An award of preliminary and permanent injunctions, enjoining Defendants, their agents, servants, officers, directors, employees, and persons or entities acting in concert with Defendants from infringing the JackRabbit Trade Dress and from engaging in any further acts of infringement and unfair competition under 15 U.S.C. § 1125(a) and Cal. Bus. and Prof. Code § 17200 *et seq.*;

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

5.    Actual damages suffered by Plaintiff as a result of Defendants' unlawful conduct, in an amount to be proven at trial;

6.    An accounting of Defendants' profits under 15 U.S.C. § 1117 and/or 35 U.S.C. § 289;

7.    A judgment trebling any damages award under 15 U.S.C. § 1117;

8.    Punitive damages in an amount to be proven at trial;

9.    Disgorgement of Defendants' profits which have arisen from their wrongful conduct;

10.    Restitution of the amounts by which Defendants have been unjustly enriched;

11.    Judgment that Defendants have directly infringed the JackRabbit Patent;

12.    Judgment that Defendants have induced infringement of the JackRabbit Patent;

13.    Judgment that Defendants have committed contributory infringement of the JackRabbit Patent;

14.    An award of preliminary and permanent injunctions, enjoining Defendants and their agents, servants, officers, directors, employees, and persons or entities acting in concert with Defendants from committing any further acts of infringement of Plaintiff's patent rights (directly, contributorily, or by inducement), including manufacturing, importing, using, exporting, offering to sell, and selling the Pony (or products colorably similar thereto), or aiding or abetting or assisting others in such infringing activities;

15.    An order seizing and impounding all Pony ebikes and all manufacturing supplies in Defendants' possession, custody, or control;

16.    An order directing Defendants to file with this Court and to serve on Plaintiff within thirty (30) days after service on Defendants of the injunction granted herein, or such extended period as the Court may direct, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with and are continuing to comply with the injunction and order of this Court;

SELTZER CAPLAN MCMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

17.     Damages to fully compensate Plaintiff for Defendants' infringement of the JackRabbit Patent, but in no event less than a reasonable royalty for Defendants' use of the patented invention;

18.     An award of treble damages under 35 U.S.C. § 284 and a finding that Defendants' infringement of the JackRabbit Patent is and was willful and deliberate;

19.     An award of attorneys' fees under 35 U.S.C. § 285 and a finding that this is an exceptional case;

20.     Pre-judgment and post-judgment interest;

21.     Costs of suit and Plaintiff's attorneys' fees under 35 U.S.C. § 285; and

22.     Any other and further relief, both general and special, at law or in equity, to which Plaintiff is entitled.

Respectfully submitted,

Dated:  May 8, 2023          SELTZER CAPLAN McMAHON VITEK
                            A Law Corporation


                            By:   s/ Jake D. Sesti
                                Richard D. Gluck, Esq
                                Jake D. Sesti, Esq.
                            Attorneys for Plaintiff JACKRABBIT
                            MOBILITY, INC.
                            Email:  gluck@scmv.com; sesti@scmv.com


Dated:  May 8, 2023          LAW OFFICES OF JOHN GIUST


                            By:   s/ John Giust
                                John Giust, Esq.
                            Attorneys for Plaintiff JACKRABBIT
                            MOBILITY, INC.
                            Email:  john@giustlaw.com

SELTZER CAPLAN McMAHON VITEK
750 B STREET, SUITE 2100
SAN DIEGO, CALIFORNIA 92101-8177

EXHIBIT 1 TO THE COMPLAINT

US00D964218S

(12) **United States Design Patent**

Piszkin

(10) Patent No.:　**US D964,218 S**

(45) **Date of Patent:**　\*\* **Sep. 20, 2022**

(54) **ELECTRIC-ASSIST ADULT STRIDER**

(71) Applicant: **Thomas Martin Piszkin**, Santee, CA (US)

(72) Inventor: **Thomas Martin Piszkin**, Santee, CA (US)

(\*\*) Term: **15 Years**

(21) Appl. No.: **29/727,965**

(22) Filed: **Mar. 14, 2020**

(51) **LOC (13) Cl.** .............................................. **12-11**

(52) **U.S. Cl.**
　　USPC ........................................................ **D12/111**

(58) **Field of Classification Search**
　　USPC ....... D12/107, 110, 111, 114, 117, 118, 119;
　　　　　　　　　　　　　　D21/419, 423, 424, 432
　　CPC . B62K 3/00; B62K 3/005; B62K 3/02; B62K
　　　　　3/04; B62K 3/06; B62K 3/10; B62K
　　　　　9/00; B62K 19/00; B62K 19/02; B62K
　　　　　19/04; B62K 19/06; B62K 19/30
　　See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D43,625 | S | \* | 2/1913 | Meiser ......................... D12/110 |
| 5,474,148 | A | \* | 12/1995 | Takata ................... B60L 50/52 |
| | | | | 180/206.2 |
| 7,490,842 | B1 | \* | 2/2009 | Ulrich ................. B62K 15/006 |
| | | | | 280/278 |
| D636,298 | S | \* | 4/2011 | Yang ........................... D12/111 |
| D727,215 | S | \* | 4/2015 | Yang ........................... D12/111 |
| D826,102 | S | \* | 8/2018 | Lefort ......................... D12/111 |
| D833,916 | S | \* | 11/2018 | Yu ............................... D12/111 |
| D924,732 | S | \* | 7/2021 | Lin ............................. D12/111 |
| D925,404 | S | \* | 7/2021 | Lin ............................. D12/111 |
| D925,405 | S | \* | 7/2021 | Lin ............................. D12/111 |
| 2003/0209875 | A1 | \* | 11/2003 | Groendal ................ B62K 19/00 |
| | | | | 280/275 |
| 2013/0075175 | A1 | \* | 3/2013 | Vollmer ................. B62K 3/02 |
| | | | | 180/206.2 |
| 2017/0001682 | A1 | \* | 1/2017 | Hayslett ................ B60W 10/08 |

FOREIGN PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| CN | 205499234 | U | \* | 8/2016 | ............... B62K 3/04 |
| KR | 100935324 | B1 | \* | 1/2010 | |
| WO | WO-2017015121 | A1 | \* | 1/2017 | ............... B62K 3/02 |

OTHER PUBLICATIONS

TotGuard Electric Bike, Published Sep. 29, 2021 [online], [retrieved on Oct. 17, 2021]. Retrieved from the Internet: https://www.amazon.com/Electric-TotGuard-Foldable-Bicycles-Suspension/dp/B09GLSQNF4/ref=sr_1_1?dchild=1&keywords=B09GLSQNF4&qid=1634533267&sr=8-1&th=1 (Year: 2021).\*

\* cited by examiner

*Primary Examiner* — Cary M Robinson
*Assistant Examiner* — Adam C Mager
(74) *Attorney, Agent, or Firm* — Withrow & Terranova, PLLC

(57) **CLAIM**

The ornamental for an electric-assist adult strider, as shown and described.

**DESCRIPTION**

FIG. **1**—Right side orthographic view of patent subject
FIG. **2**—Front elevation view of patent subject
FIG. **3**—Rear elevation view of patent subject
FIG. **4**—Right side elevation view of patent subject
FIG. **5**—Left side elevation view of patent subject
FIG. **6**—Top plan view of patent subject
FIG. **7**—Bottom plan view of patent subject; and,
FIG. **8** is a right side elevation view of the electric-assist adult strider shown in a different broken line environment. The broken lines shown in the drawings illustrate portions of the electric-assist adult strider in which the design is embodied and forms no part of the claimed design.

**1 Claim, 8 Drawing Sheets**



Exhibit 1
Page 41



FIG. 1

Exhibit 1
Page 42



FIG. 2

Exhibit 1
Page 43



FIG. 3

Exhibit 1
Page 44



FIG. 4

Exhibit 1
Page 45



FIG. 5

Exhibit 1
Page 46



FIG. 6

Exhibit 1
Page 47



FIG. 7

Exhibit 1
Page 48



FIG. 8

Exhibit 1
Page 49